(44 App. Div. 357.)

NATIONAL BANK OF DEPOSIT v. ROGERS et al.

(Supreme Court. Appellate Division, First Department. November 17, 1899.)

1. REPLEVIN—EQUITABLE LIEN—AFTER-ACQUIRED PROPERTY.

To secure a loan, the consignees of goods in bond, awaiting payment of duties, delivered their note to the lender, reciting the delivery of the goods, and the establishment of a lien thereon for the loan, and also a paper acknowledging their redelivery to the borrowers, to be held in trust for the lender, and sold for his account, the proceeds to be applied to the loan, and providing that the lender might at any time take possession of the goods or proceeds, wherever found. Having secured the goods from bond, the borrowers assigned, and the lender replevied them of the assignee, but was defeated because he never had possession. He thereupon amended, substituting, without objection, a proceeding to establish an equitable lien on the goods seized, and for an accounting for those not reached by the replevin, and for a cancellation of the replevin bond. *Held,* that the borrowers received the goods from bond impressed with the lien, and their assignee with notice was liable to account for those not replevied.

2. SAME.

The lender was entitled to establish his lien on the goods replevied, though he had already sold them, and held the proceeds subject to the action.

3. SAME—PARTIES.

It was not necessary that one of the borrowers, who had demurred to the complaint in the replevin action, and had been discharged, should be made a party to the reconstructed action to establish the lien.

4. SAME—INSUFFICIENT COMPLAINT—MOTION TO DISMISS—ADMISSION OF PROOF —AMENDMENT.

Where the complaint is fatally defective for want of sufficient allegations, and is properly excepted to by a motion to dismiss, it is error to permit proof to be taken subject to a decision of the motion, and thereafter allow the complaint to be amended to conform thereto.

5. EQUITABLE LIEN—ACTION TO ESTABLISH—COMPLAINT—REQUISITES.

The complaint, in an action to establish an equitable lien to secure a debt, need not show that the debt is due in the sense of being payable, if it shows its existence.

6. SAME.

    The complaint, in an action to establish an equitable lien to secure a debt, need not distinctly allege that the property on which the lien was claimed ever became the property of the debtor, where facts are alleged from which the status of the debtor to the property could be determined, and his equitable obligation to plaintiff with reference thereto could be declared.

    McLaughlin, J., dissenting.

Appeal from special term, New York county.

Action by the National Bank of Deposit against Henry P. Rogers and others, executors, etc., to enforce an equitable lien on personal property. From a judgment for plaintiff (57 N. Y. Supp. 625), defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Thaddeus D. Kenneson, for appellants.

A. G. Todd, for respondent.

PATTERSON, J. This action was commenced against John L. Sardy and John Bard Rogers, composing the firm of Sardy, Coles & Co., and Nathaniel P. Rogers. J. B. Rogers demurred to the original complaint, his demurrer was sustained, and he disappeared from the action. Pending suit, Nathaniel P. Rogers died, and the executors of his will were substituted as defendants in his place. When the cause was before us on a former appeal (1 App. Div. 623, 37 N. Y. Supp. 365), it came up as an action in replevin, in which the plaintiff had recovered a judgment. That judgment was reversed, for the reason that, under the proofs as they then appeared, the plaintiff had neither the legal title to, nor the technical legal right to, possession as pledgee of the merchandise, the subject of the action. In discussing the case as it was then made, it was said in the opinion of the court that, at the utmost and upon the conceded facts, the plaintiff acquired only an equitable lien on the merchandise. After the judgment of reversal was entered, the plaintiff applied for leave to amend the complaint, which was granted, and an amended pleading was served which transformed the action into one in equity, bringing within its scope, and for administration by the court, all the equities of the parties, arising not only out of the original transaction, but also those springing from the acts and dealings of the plaintiff with respect to the merchandise, and the proceeds of some of it, after the institution of the action and in execution of the writ of replevin. The defendants answered the amended complaint, the cause went to trial, and resulted in another judgment in favor of the plaintiff, granting it, upon an adjustment of all the equities, the relief it asked. In the amended complaint, the facts necessary to the assertion and establishment of an equitable lien are stated, unless that complaint is fatally defective in particulars, which will be adverted to hereafter.

There can be no doubt, upon the proven facts, that the plaintiff was entitled, upon the original transaction, to an equitable lien; nor do we think it disputable that, upon the uncontradicted facts

connected with that original transaction, the plaintiff would have been entitled to a decree to compel specific performance of the agreement to give to it in pledge and upon demand the merchandise upon which it made the advances set forth in the complaint. That there is an inconsistency in the different attitudes which the plaintiff has taken with respect to the merchandise is doubtless true. Its first claim was as owner, and was founded upon the relation it claimed was established by the execution and delivery of the trust receipt given in connection with its advance of money. This court having held that the plaintiff did not occupy the relation of owner to the property, the suit was reconstructed by the amended complaint, and the right to an equitable lien was asserted. As the action is now brought before us, it is immaterial what may have been the plaintiff's original attitude, for the defendants have acquiesced in trying the issues as they are tendered by, and framed upon, the allegations of the amended complaint. It is necessary, however, that we recur to the early history of the transaction between the parties in order to understand how the equitable rights asserted by the plaintiff arise.

The firm of Sardy, Coles & Co., consisting of Mr. Sardy and John Bard Rogers, imported from Europe certain merchandise, which on the 31st of August, 1891, was in the city of New York in the possession of the United States customs authorities, and held by them subject to the payment of duties. The evidences of title, viz. the bills of lading and the consular invoices, were made out in the name of, and were held by, the firm of Perry, Ryar & Co., custom-house brokers, in whose name the importation had been made by Sardy, Coles & Co. The last-named firm, not having the money with which to pay the import duties, applied to the president of the plaintiff for a loan to enable them to do so. The application was made by Mr. Sardy, accompanied by Mr. Ryar, of the firm of Perry, Ryar & Co. Sardy told the president of the plaintiff that he had bought the goods abroad, and Mr. Ryar confirmed that remark, and stated that his firm had no interest in the goods other than to collect the duties and to make the entries at the custom house. Thereupon the sum of $3,000 was loaned by the plaintiff to Sardy, Coles & Co., with the knowledge of Perry, Ryar & Co., and a promissory note was made by Sardy, Coles & Co., and delivered to the plaintiff, which note was dated August 31, 1891, and was for the sum of $3,000, payable on demand, with interest at the rate of 6 per cent.; and it recited that the makers had deposited with the bank, as collateral security for its payment, certain merchandise (being the merchandise referred to in this action); and it also recited that the makers "do hereby give the said National Bank of Deposit a lien for all of the said demands, upon all property left with the said National Bank of Deposit, * * * and hereby authorize said bank, on the nonperformance of this promise, or the nonpayment of any of the demands aforesaid, or failure to furnish further security as hereafter agreed, to sell the whole or any part of said collaterals," etc. The agreement for security contained in this note seems to have been considered as a bill of sale. At the same time, Sardy, Coles & Co. delivered to the plain-

tiff a certain document called a "trust receipt," in the following
words: ·

"Received of the National Bank of Deposit the following goods and mer-
chandise specified in the bill of sale, dated August 31st, 1891, herewith at-
tached; and in consideration thereof we thereby agree to hold said goods in
trust for said bank, and, as their property, to sell the same for their account;
and further agree, in case of sale, to hand the proceeds to them to apply against
any indebtedness to said bank on our account, under loans on our account, and
for payment of any indebtedness of ours to said bank. The National Bank of
Deposit may at any time cancel this trust, and take possession of said goods
or the proceeds that may be found; and in the event of any suspension or fail-
ure or assignment for benefit of creditors on our part, or of the nonfulfillment
of any obligations, or of the nonpayment at maturity of any indebtedness made
by us under said consignment by the National Bank of Deposit on our ac-
count, or of any indebtedness to said bank, all obligations, acceptances, in-
debtedness, and liabilities whatever shall thereupon (with or without notice)
mature and become due and payable. The said goods while in our possession
shall be fully insured against loss by fire."

The merchandise was taken from the custom house, the duties hav-
ing been paid with a part of the money borrowed on this transaction
from the plaintiff. After the goods came into the possession of
Sardy, Coles & Co., a portion thereof was sold. Shortly thereafter,
Sardy, Coles & Co. made an assignment to Nathaniel P. Rogers of
a stock of merchandise and their accounts, to secure Mr. Rogers for
advances of money he had made to that firm. Under that assign-
ment, Mr. Rogers took possession of the merchandise, including the
unsold portion covered by the trust receipt, and he also collected the
amounts due on the portion of that merchandise that had been sold.

Thus far the relations existing between the parties are very clearly
defined. The bank had advanced its money on a specific agree-
ment that it should have certain merchandise as security. That
merchandise was to come into the possession of the borrower of the
money; it was to be received and sold on account of the lender;
the actual possession was to be given to the latter upon its demand.
Mr. Nathaniel P. Rogers, when he took possession of some of the
merchandise under the assignment to him, and collected the pro-
ceeds of sale of the other portion, stood in no better or other or dif-
ferent relation to the subject than Sardy, Coles & Co. maintained.
He had actual notice of the plaintiff's claim to the property. In
that situation, the plaintiff, not being entitled to gain possession of
the goods by an action of replevin, as was heretofore decided, was
authorized to apply to a court of equity to establish and to enforce
its right in and to the goods by way of equitable lien, and to have
such disposition made of them as equity and justice required. An
equitable lien must be judicially established and declared. It must
be found to exist, and in its very nature is a right, not recognized by
law, to have the property or its avails applied as required by some
agreement or transaction binding in conscience upon the parties to
it. We have in the case, therefore, the cardinal facts that the sum
of $3,000 was advanced; an agreement for a lien upon certain mer-
chandise, from which reimbursement of the loan was to be made;
an agreement that the goods should be held or disposed of solely for
the benefit of the lender or delivered to it on demand. We have no

doubt that, as between the bank and Sardy, Coles & Co. and any one not a bona fide transferee from that firm, specific performance of that agreement would be compelled. Husted v. Ingraham, 75 N. Y. 254, citing Holroyd v. Marshall, 10 H. L. Cas. 191; Mitchell v. Winslow, 2 Story, 631, Fed. Cas. No. 9,673; Smithhurst v. Edmunds, 14 N. J. Eq. 408; Hale v. Bank, 49 N. Y. 626; Id., 64 N. Y. 550.

The whole of this transaction, in its origin, indicates, not only the intention of the parties that the lien should exist, but its form was such that, when the goods came into the possession of Sardy, Coles & Co., the plaintiff's right immediately attached. Sardy, Coles & Co. did not have the legal title to the merchandise. That was in Perry, Ryar & Co. That firm, in effect, transferred and delivered to Sardy, Coles & Co. the possession of that merchandise. When it thus came in the possession of Sardy, Coles & Co., they took it affected in equity by all the terms of the agreement contained in the provision for security incorporated in, or connected with, the note and in the trust receipt. The plaintiff's equity is therefore so clearly established that it does not admit of doubt or discussion.

We think it quite clear that, under the agreement of the parties, the court could have decreed that Sardy, Coles & Co., upon the demand of the plaintiff, should deliver to it the possession of this merchandise, to be held as security to the note; and, that being so, the court had jurisdiction to declare what the rights of the plaintiff in and to that merchandise or its proceeds are, and to settle all matters in controversy between the parties respecting the same. With that jurisdiction and power, the plaintiff has brought before the court in its amended complaint certain matters showing a change in its relation to the property, operated by the institution of this action as one in replevin and the disposition of a certain portion of the merchandise pending the action. It sets up in the amended complaint that a portion of the goods and chattels were taken by the sheriff of the city and county of New York, and handed over to the plaintiff, upon its giving an undertaking in replevin; that "the goods were never rebonded by the sheriff, and that the defendants still hold the bond of the plaintiff conditioned for the return of the goods or their value"; and it further appears in the proofs that of the goods taken by the sheriff, and delivered to the plaintiff, on the writ, a certain portion was sold by the plaintiff, and it now retains the proceeds. Although the case came before the court at the last trial in a most awkward and inartificial manner, nevertheless, upon the proofs, the equities of the plaintiff were fully made out, and its right to relief on those proofs was fully established. The curious performance of turning the replevin suit into a bill in equity was acquiesced in. The trial justice was justified in the decision he made. He finds, in substance, the facts of the original transaction, and properly stated the rights of the parties thereunder, namely, that there was an actual agreement between the plaintiff and Sardy, Coles & Co. to pledge the identical goods, the subject of the action; that they received those goods, and became possessed of them in trust for the plaintiff; that as to the goods the subject of the agreement to pledge, or the proceeds of any goods that were affected by

that agreement, which came into the hands of Nathaniel P. Rogers, and remained unaccounted for, the defendants, the executors of his will, were liable to account; and that as to the goods taken by the plaintiff on the replevin, and the proceeds of which were in the plaintiff's hands, the plaintiff's possession was not absolute, notwithstanding the amendment of the pleadings; and, there being an issue as to the substantial rights of the parties thereto, he held that the plaintiff was entitled to judgment in equity to the effect that it had an equitable lien upon the goods seized in replevin, and that the lien was transferred and attached to the proceeds of the goods, and that the judgment should declare the plaintiff was entitled to the property, and should award to the plaintiff the proceeds, and direct that the undertaking given on the replevin be canceled. All the facts being before the court, it could adapt its relief to the requirements of the case (Murtha v. Curley, 90 N. Y. 372); and the relief which was granted could not be awarded until the plaintiff's rights were ascertained, its equitable lien established, and thereupon it became competent to the court to make a final disposition of the whole subject-matter of the action, and, without further vexatious litigation, end the controversy between the parties.

But the defendants insist that material proof upon which the decree was based was inadmissible under the pleadings, and that the court below was not justified in making its adjudication upon that proof, because of insufficiency of the allegations of the amended complaint. The point is legitimately in the case. It was raised at the beginning, and was insisted upon at various stages of the trial, and cannot be ignored. Before any evidence was offered, counsel for the defendants moved to dismiss the complaint on the specific grounds that the plaintiff failed to state therein that anything was due from the firm of Sardy, Coles & Co. to the plaintiff; that there was no allegation of any indebtedness whatever of that firm to the plaintiff; that the complaint failed to state that the goods on which the plaintiff claimed an equitable lien ever became the goods of Sardy, Coles & Co., and therefore failed to show that the bank ever obtained a lien on any goods; and that it was impossible that an effectual judgment should be given in the case in the absence of John Bard Rogers, who was a member of the firm of Sardy, Coles & Co. The court reserved its decision on that motion, directed the trial to proceed, and stated that, in case the motion should be denied, an exception would be noted for the defendants, and, if granted, the plaintiff would have an exception. At a subsequent stage of the case, when evidence was offered of the note being unpaid and enforceable, the objection to the admission of the testimony was renewed, and at the close of the trial a motion to dismiss was again made on substantially the same grounds as at first, and again the court reserved its decision. Thereupon counsel for the plaintiff moved to amend the pleadings to conform to the proof "in respect to the allegation that Sardy, Coles & Co. owned the goods, and that the debt caused by the borrowing of the money by Sardy, Coles & Co. from the bank was not repaid, and that the goods had come into the possession of Sardy, Coles & Co." Objection was taken to this

motion to amend that it came too late, and was not in proper form; that no amendment had been formulated, and it was impossible to tell what amendment was proposed. The court then remarked: "I have, subject to the motion, taken all the evidence,—subject to the motion to dismiss the complaint for insufficiency." This was a clear declaration of the court that the evidence was admitted conditionally, and subject to the motion to dismiss the complaint for insufficiency. The matter seems to have been left there until the justice made his decision, in which is contained the following, viz.: "I do further grant the motion of the plaintiff to conform the pleading to the proofs as to the goods being the goods of Sardy, Coles & Co., and having come into their possession, and as to the loan of $3,000 not having been wholly repaid, and I do deny the motions of the defendants for the dismissal of the complaint."

If the complaint is fatally defective for the want of the allegations referred to, the defendants' counsel is entirely right in the criticism he makes upon the conduct of the trial and the action of the court respecting an amendment. It was not competent for the court to amend the complaint to conform to the proofs, under the conditions of this record. Rutty v. Jar Co., 52 Hun, 494, 495, 6 N. Y. Supp. 23; Beard v. Tilghman, 66 Hun, 15, 20 N. Y. Supp. 736. The defendants had fairly and honestly challenged the sufficiency of this complaint from the beginning, and the court had taken proof subject to the decision of the motion to dismiss the complaint, and when the case was finally submitted that was reiterated. The defendants were entitled to stand upon the case as it was made, and to have their motion disposed of, without proofs conditionally admitted being used as the basis of an amendment to conform the pleadings to proofs. But we think the complaint was not radically defective in the respects claimed by the learned counsel for the appellants, and that it was not necessary for the maintenance of the action that there should be a direct and positive allegation that the $3,000 note was actually due or still unpaid, and that the indebtedness of Sardy, Coles & Co. to the plaintiff for that amount was still outstanding. Hence we consider the case as if the defendants' objections and motions had been overruled, and exceptions duly taken, and shall disregard the amendment allowed to conform the pleading to the proof, holding that such action was not justified, and that no amendment of the amended complaint has been made. It is unquestionably a positive rule that whatever facts are material to the support of an action must be pleaded and proven. As, where an action is on contract for the payment of money, nonpayment is a material element of the plaintiff's cause of action. Lent v. Railway Co., 130 N. Y. 504, 29 N. E. 988; Cochran v. Reich, 91 Hun, 440, 36 N. Y. Supp. 233; Hicks-Alixanian v. Walton, 14 App. Div. 200, 43 N. Y. Supp. 541. But the allegations here were sufficient to entitle the plaintiff to the relief it asked respecting the merchandise and its application as security to the note. The plaintiff was entitled to some relief, whether a debt was due in the sense of being payable or whether it was merely owing. It was enough to show in the

61 N.Y.S.—11

complaint that a debt existed. The statement of the transaction, as
set out in the amended complaint, with the exhibits annexed to and
made a part of that pleading, shows that the plaintiff was then the
holder of the promissory note and of the trust receipt. The meta-
morphosed action is founded upon rights acquired under those two
instruments, and its object was to reach security to which the plain-
tiff claimed to be entitled under them. To obtain such relief, all
that was necessary for the plaintiff to show was an indebtedness,
an agreement to give the security, and the failure to do so when it
was demanded. The existence of the indebtedness is set forth in
the allegation contained in the second paragraph of the amended
complaint, and profert of the note is made in that pleading. The
agreements to give the security are contained in the exhibits an-
nexed to, and forming part of, that complaint. Under its allegation,
the possession and production on the trial of the note established
that the plaintiff was the holder of that note. The breach of the
contract to pay the indebtedness was not the gravamen of the action;
the right to draw the security to the note held by the plaintiff was
the real subject involved. So that, when the motion was made at
the beginning of the trial to dismiss the complaint for want of an
allegation that there was something "due" from the firm of Sardy,
Coles & Co. to the plaintiff, that motion should have been denied.
It was also competent for the court to take into consideration the
condition and situation of the merchandise, and what had been
done with it, under the allegation of the amended complaint, which
refers to the execution of the writ of replevin, namely, that some
of the goods and chattels were taken under the writ, and delivered
to the plaintiff, upon its giving its bond. There being also allega-
tions in the complaint respecting the receipt by Mr. Nathaniel P.
Rogers of the proceeds of some of the goods sold by Sardy, Coles &
Co. before the assignment to Mr. Rogers was made, all the facts
relating to the property and its proceeds came legitimately before
the court. This view necessarily sustains the admissibility of evi-
dence admitted respecting the debt arising on the note, and the
condition of that indebtedness at the time of the trial. It was ad-
missible, in order that the court might finally settle the rights of
the parties.

It was further objected to the complaint that it did not allege
that the goods on which the plaintiff claimed the lien ever became
the goods of Sardy, Coles & Co. There is no such distinct allega-
tion in the complaint, nor was it necessary. The instruments con-
stituting the relations between the parties were annexed to the
amended complaint, and there is an allegation in its third paragraph
that Sardy, Coles & Co. acquired the possession of the goods, paying
the duties with the moneys advanced by the plaintiff, and taking
them from the custom house, and holding them pursuant to the
terms of the trust agreement. From these facts, the court could
determine the status of Sardy, Coles & Co. as to the goods, and de-
clare what equitable duty or obligation was imposed upon that firm
towards the plaintiff with reference to the goods.

A further ground of nonsuit was urged, and that is that John B.

Rogers, a member of the firm of Sardy, Coles & Co., was not a party to the action as reconstructed. This objection was not taken by answer or demurrer. It appears that he was a party to the replevin suit; that he demurred to the complaint in that action, and he was discharged from the suit. We do not see that there was any occasion for bringing him back again. A definite judgment, as between all the parties, settling and adjusting the rights and equities, could be had without his presence.

The judgment was properly rendered on the pleadings without any amendment and the proofs, and should therefore be affirmed, with costs. All concur, except McLAUGHLIN, J., dissenting.

McLAUGHLIN, J. I dissent. The defendants' motion, made at the opening of the trial, to dismiss the complaint, should have been granted, and they could not be deprived, without their consent or acquiescence, of their exception to the refusal to dismiss, by the court's subsequently conforming the pleadings to the proof. The complaint should have been dismissed because the facts therein stated did not constitute a cause of action against the defendants. The Code provides (section 481) that a complaint must contain a plain and concise statement of the facts constituting the cause of action. This provision is a wise one. The purpose to be accomplished by it is manifestly to apprise the defendant in advance of the trial of what the plaintiff intends to prove, in order that a proper defense may be made, and it necessarily follows that whatever facts are necessary to be proven upon the trial to entitle the plaintiff to recover must be alleged in the complaint. Otherwise there is no meaning to the section, and a complaint serves no useful purpose. Here the complaint did not state a cause of action, for the reason that there was no allegation in it, or the statement of any fact from which an allegation to that effect could be inferred, that the firm of Sardy, Coles & Co. was indebted to the plaintiff in any sum whatever. All that the complaint stated upon the subject of an indebtedness was that "on or about the 31st day of August, 1891, this plaintiff loaned to the defendants John L. Sardy and John Bard Rogers, composing the co-partnership firm of Sardy, Coles & Co., the sum of $3,000, for which said firm gave its demand note secured by its pledge, or agreement to make a pledge, to this plaintiff," of certain described goods. It is true, as stated in the prevailing opinion, that a copy of the note referred to was annexed to the complaint; but there was no allegation that the plaintiff was then owner or holder of the note, or that it had not been paid, or that the firm of Sardy, Coles & Co. was, at the time the action was brought, indebted to the plaintiff in any sum whatever. If this were an action at law to recover the amount of the note, it could not be seriously contended but that the complaint would have been fatally defective, in that it failed to allege nonpayment. In such case the failure to pay according to the terms of the contract would be the basis of plaintiff's right to recover. Lent v. Railroad Co., 130 N. Y. 504, 29 N. E. 988; Witherhead v. Allen, 4 Abb. Dec. 626; Van Giesen v. Van Giesen, 10 N. Y. 316.

In the Lent Case, supra, the court said:

"It does not admit of controversy that, upon an original contract for the payment of money, nonpayment is the fact which constitutes the breach of the contract, and is the essence of the cause of action, and, being such within the rule of the Code, it should be alleged in the complaint."

And in Witherhead v. Allen, supra:

"When the action is founded upon a contract obligation or duty, the very gist and essence of the cause of action is the breach thereof by the defendant, and, unless the breach is alleged, no cause of action is shown."

And in Van Giesen v. Van Giesen, supra:

"The material allegations of the complaint in this case are the making by the defendant of the promissory note, the transfer of it to the plaintiff, and the nonpayment by the defendant. Each of them is material, for, without the concurrence of all of them, the complaint would not show a cause of action."

Manifestly, not only under the plain and obvious meaning of the section of the Code referred to, but under the authorities cited, in an action to recover upon the note itself, it would be necessary for the plaintiff to allege and prove nonpayment. If I am right in this conclusion, then it necessarily follows, as it seems to me, in an equitable action brought to establish a pledge of personal property given to secure payment of the note and to foreclose the pledge, that the fact of nonpayment of the note must be alleged in the complaint and proved upon the trial. It cannot be otherwise, because the breach of the contract to pay the note is of the essence of the cause of action. It is the basis of plaintiff's right to proceed in equity. It is the fact which gives it standing in court. Payment of the note would, ipso facto, satisfy the pledge, and destroy any right which the plaintiff theretofore had to proceed in equity. It follows, therefore, that nonpayment of the note must be alleged in the complaint, and, the plaintiff having failed to allege that fact, the complaint should have been dismissed. Ryan v. Holliday, 110 Cal. 335, 42 Pac. 891. It is unnecessary to pass upon the other questions raised.

For these reasons I cannot concur in the opinion of Mr. Justice PATTERSON. I think judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.